11771. MACON CANNING COMPANY *v.* ROBERTS.

HILL, J. 1. The construction of an unambiguous contract is a matter for the court, especially when there is no contention that there is any ambiguity in the terms of the contract. Park's Ann. Code, § 4265; *Ludden & Bates Sou. Music Co.* v. *Dairy & Farm Supply Co.*, 17 App. 581(1) (87 S. E. 823). It was therefore not error for the court to charge, " As I stated, the contract is attached to the petition and will be out with you, and is not ambiguous, and you will see the terms of the contracts from the contract itself."

2. A contract between employer and employee is not terminated by the destruction of the property of the employer by fire, and although the employer ceased to do business as a result of the fire, he would still be bound by the terms of his contract. *Madden* v. *Jacobs*, 52 La. Ann. 2107 (28 South. 225, 50 L. R. A. 827).

3. Questions made for the first time in the petition for certiorari will not be passed upon by the superior court.

4. The evidence set out in the answer of the magistrate and the terms of the contract of employment do not show an accord and satisfaction, and the following abstract from the charge of the trial court stated a correct principle of law: " I charge you, along that line, that the fact that an employee, when he received a part of his wages, gave a receipt in full for payments, does not estop him to claim the balance, when it appears that, at the time, he protested against the stoppage of a portion of his wages." *Ga. R. Co.* v. *Gouedy*, 111 *Ga.* 310 (36 S. E. 691).

5. The evidence supported the verdict and no error of law appears from the record.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED JANUARY 20, 1921.

Certiorari; from Bibb superior court — Judge Mathews. July 13, 1920.

The terms of the written contract between the defendant, the Macon Canning Company, as employer, and the plaintiff as employee, were: " The Macon Canning Company hereby agrees to pay the said C. W. Roberts the sum of one hundred and fifty dollars ($150.00) per month, commencing from the twenty-first day of April, 1919, the said sum to be payable on the first day of each month during the continuance of this contract, and, in consideration of said sum being paid him, the said C. W. Roberts agrees to give his entire time to the buying and selling of all products, supplies, etc., and all shipping connected with the business of said Macon Canning Company, and generally to perform all duties assigned him by the general manager in connection with the business and affairs of said Macon Canning Company. It is distinctly understood and agreed between the parties hereto that this contract shall cease and determine between the parties hereto and become null and void and of no effect at the pleasure of either of the parties hereto after thirty (30) days notice in writing, by either party desiring to withdraw and terminate this contract, to the opposite party."

On May 27, 1919, the plant of the Macon Canning Company was destroyed by fire, and on June 11, 1919, the plaintiff received written notice from the company that his services would be dispensed with. On July 19, 1919, this suit was brought in the municipal court of Macon for salary from the date of the fire to July 11, 1919. The defendant in its answer denied liability for any amount, and pleaded that the defendant had wholly failed to carry out his contract during the period for which he alleged the salary was due. The charge of the court states, in addition to this contention, that " it is contended by the defendant that he had full and final settlement with the plaintiff, that on June 6th he gave him a check for $135, that the plaintiff accepted the check in full payment of contract of employment, the defendant contending that the plaintiff, at the time of accepting the check, told him he did not charge him for further service after the fire which

destroyed the canning factory. " The jury were instructed that if the plaintiff " accepted this $135 payment in full settlement of the contract, " they should find for the defendant. In the judge's answer to the certiorari it is stated that accord and satisfaction was not pleaded, and " was never urged during the trial of the case." It is further stated in the judge's answer that although the defendant in its oral motion for a new trial made the contention that the destruction of its plant by fire was an act of God, and for that reason it was not liable, " this contention was not urged during the trial, and the plea of the defendant did not authorize it. "

The verdict was against the defendant, for the full amount sued for. Certiorari was sued out by the defendant, the judge of the superior court overruled the certiorari, and the defendant excepted. In the petition for certiorari it is alleged that the verdict was contrary to law and to the evidence, and that the judge erred in failing " to charge the jury of defendant's contentions in the case at all fully, " and in giving certain instructions to the jury, and in overruling the defendant's motion for a new trial, which was based on these grounds. The instructions complained of are set out in the foregoing decision. Violation of the " Dumb act " (Civil Code of 1910, § 4863) is alleged as to the instruction that the contract " is not ambiguous, " the defendant contending that this was an expression of opinion on the evidence, and that it was for the jury to say what was the intention of the parties to the contract.

According to the plaintiff's testimony, he went to the defendant's plant, on learning that it had been destroyed by fire, and offered his services, and made subsequent visits to the plant, going three times, but there was nothing to do and he was not given anything to do; he told Mr. Webster, an officer of the defendant company, that he was ready to work, and Webster told him there was nothing that could be done, and that he (Webster) would let him know if anything turned up. He was told, each time he went to the factory, that he would be notified when things were in shape and there would be something to do. He held himself in readiness to work, and he got up a few invoices soon after the fire, Webster having told him to do so, and he did not do anything else during the period from May 27 to July 11, when he received

written notice from Webster that his services would be dispensed with after thirty days. He was in town and at his home practically all the time between the date of the fire and July 11, and Webster never called him up or gave him directions or anything to do. He met Webster three or four times on the street during that time. Webster testified, that on June 6, 1919, the plaintiff came to him and said he (the plaintiff) "would not expect to hold us to the contract; that he realized that the plant was burned; and I paid him in full to date, for his salary to June 6, 1919. He accepted this check in full settlement, . . stated to me then and there that he would not expect any further pay." A check of the defendant for $135, dated June 6, 1919, and payable to the plaintiff, on which were written the words, "in full to date," was introduced in evidence. Webster testified also that there was plenty of work to be done at the defendant's plant, damaged machinery to be taken down and shipped, and stock to be cleaned off, orders to be taken up and old business to be wound up, and the plaintiff could have been busy all the time; and he could never reach the plaintiff at home, although he (the witness) telephoned time after time; that there was no buying, selling, or shipping to be done for some time after the fire, and he (the witness) did not know whether there was any to be done before July 11; that he did not tell the plaintiff anything to do, except to get up some invoices, which he did. The petition for certiorari states that this witness testified: "We did not send him [Roberts] the formal notice he claimed. We wrote him a letter giving him to understand he was not on our pay roll." The answer to the certiorari states that this witness "testified that he gave the notice, copy of which is attached to the petition, stating that he gave it on June 11, and that . . an attorney at law prepared it for him." The notice is not in the record sent to this court. In rebuttal the plaintiff testified, that when the check mentioned above was given to him it did not have on it the notation, "in full to date;" that Webster took the check back and made this notation, and he accepted it after the notation was made, but told Webster at the time that it was not in full settlement, and protested against having the words in the check; it was not in full settlement and was not so accepted.

*Hubert F. Rawls,* for plaintiff in error.

*Jones, Park & Johnston,* contra.